1

2

3

4

5

6

7

8

9

10

11

12

U.S. COMMODITY FUTURES TRADING COMMISSION
Timothy J. Mulreany
Chief Trial Attorney
Maryland Fed. Bar No. (08262)
David A. Reed
Senior Trial Attorney
Florida Bar No. (277315)
Division of Enforcement
1155 21st Street, NW
Washington, D. C. 20581
(202) 418-5000

13

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

14

**CASE NO:**

15

16

17

18

19

20

21

22

| U. S. COMMODITY FUTURES TRADING COMMISSION, | )                  |
|---|---|
| Plaintiff, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) **COMPLAINT** |
| JOSEPH CLARK LAVIN, a.k.a. JOSEPH IVCEVIC, | ) |
| GLOBAL ASSET PARTNERS, LTD a.k.a. GLOBAL ASSET PARTNERS, LLC, | ) |
| GLOBAL CURRENCY TRADING GROUP, LLC, and | ) |
| GLOBAL CURRENCY TRADING FUND, LLC | ) |

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 1
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

| | |
|---|---|
| Defendants, | ) |
| v. | ) |
| REBECCA LAVIN, WENDY ANDERSON, and PROSPERITAS INTERNATIONAL CREDIT UNION | ) |
| Relief Defendants. | ) |

**COMPLAINT FOR A PERMANENT INJUNCTION,
OTHER EQUITABLE RELIEF,
AND CIVIL MONETARY PENALTIES**

**I.**

**SUMMARY**

1.     Beginning on or about January 2001 and continuing to the present (the "relevant period"), defendant Joseph Clark Lavin, a.k.a. Joseph Ivcevic ("Lavin"), and defendants Global Asset Partners, LTD, a.k.a. Global Asset Partners, LLC, Global Currency Trading Group, LLC and Global Currency Trading Fund, LLC (collectively the "corporate Defendants"), using false and misleading representations and omitting material information, solicited retail customers throughout the United States, Canada, France and Panama to purchase foreign currency ("forex") options contracts.  As a consequence of Lavin's and the corporate Defendants' fraudulent solicitations and misappropriation of customers' funds, the Defendants' scheme defrauded customers of, and/or misappropriated, more than $16 million in customer funds.  Lavin and the corporate Defendants (collectively the "Defendants") used the misappropriated customer funds to purchase, among other things, homes, vacations, property in Costa Rica, and season tickets to the Seattle Mariners baseball team.

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 2
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

2.      The Defendants have engaged in acts and practices that constitute violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 1 *et seq.* (2002), and Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R § 1.1 *et seq.* (2007).  Lavin and/or Lavin's and the Corporate Defendants' agents knew or recklessly disregarded the fact that their representations and omissions of material fact were false or acted in an extreme departure from the standards of ordinary care by making such representations and/or omitting material information.  Consequently, these acts and practices violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(1) and (3), 32.9(a), (b) and (c), 17 C.F.R §§ 1.1(b)(1) and (3), 32.9(a), (b) and (c) (2007).

3.      Because the Defendants made or caused to be made false reports or statements in connection with the confirmation of the execution of forex options transactions, the Defendants violated Sections 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002) and Regulations 1.1(b)(2) and 32.9(b), 17 C.F.R §§ 1.1(b)(2) and 32.9(b) (2007).

4.      At all relevant times, Lavin was acting as the agent of the corporate Defendants. Therefore, each of the corporate Defendants is liable for Lavin's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(1)(2) and (3), 32.9(a), (b) and (c), 17 C.F.R §§ 1.1(b)(1)(2) and (3), 32.9(a), (b) and (c) (2007), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Regulation 1.2, 17 C.F.R. § 1.2 (2007).

5.      Lavin directly or indirectly controlled the corporate Defendants and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the corporate Defendants violations of the Act and Regulations.  Therefore, Lavin is liable for the corporate Defendants' violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations

1   1.1(b)(1)(2) and (3), 32.9(a), (b) and (c), 17 C.F.R §§ 1.1(b)(1)(2) and (3), 32.9(a), (b) and (c)

2   (2007), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

3        6.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), the

4   Commission brings this action to enjoin the unlawful acts and practices of the Defendants and to

5   compel their compliance with the Act and Regulations.  In addition, the Commission seeks

6   disgorgement of Defendants' ill-gotten gains, restitution to customers, repatriation of funds

7   and/or an accounting, civil monetary penalties and any other available relief that the Court may

8   deem necessary or appropriate.

9        7.     Unless restrained and enjoined by this Court, the Defendants are likely to

10  continue to engage in the acts and practices alleged in this Complaint, and similar acts and

11  practices, as more fully described *infra*.

## II.

## JURISDICTION AND VENUE

14       8.     This Court has jurisdiction over the subject matter of this action and all parties

15  hereto pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), which authorizes the

16  Commission to seek injunctive relief against any person whenever it shall appear that such

17  person has engaged, is engaging or is about to engage in any act or practice constituting a

18  violation of any provision of the Act or any rule, regulation or order thereunder.  Section

19  2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2 (2002), grants the Commission jurisdiction over

20  certain transactions in forex that are contracts for the sale of a commodity for future delivery (or

21  options on such contracts), including the transactions alleged in this Complaint.

*U.S Commodity Futures Trading Commission's Complaint*                    *US CFTC*
PAGE 4                                                           *Timothy J. Mulreany*
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*     *1155 21st NW Washington DC 20581*
                                                                               *(202) 418-5306*

9.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), because Defendants are found in, inhabit, or transact business, among other places, in this District, or the acts, practices and omissions in violation of the Act have occurred, are occurring, or are about to occur, within this District, among other places.

**III.**

**THE PARTIES**

**A.      The Plaintiff**

10.      The **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2002), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2007).

**B.      The Individual Defendant**

11.      **Joseph Clark Lavin, a.k.a. Joseph Ivcevic,** resides at 14321 160th Ave NE, Woodinville, Washington 98072.  Lavin is the manager and president of Global Asset Partners, LTD a.k.a. Global Asset Partners, LLC, the manager of Global Currency Trading Fund, LLC, and is the manager and president of Global Currency Trading Group, LLC.  Lavin directed and controlled all of the corporate Defendants' respective business operations from his home in Woodinville, Washington.  Lavin has never been registered with the Commission in any capacity.

**C.      The Corporate Defendants**

12.      **Global Asset Partners, LTD a.k.a. Global Asset Partners, LLC ("GAP"),** is purportedly an International Business Corporation ("IBC") formed under the laws of the

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 5
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

Federation of St. Christopher and Nevis ("Nevis"), that is managed and controlled by Lavin from his home in Woodinville, Washington, although it purports to operate from "offices" in Nevis. Lavin has opened trading accounts in GAP's name, and has identified himself as an officer of GAP.  GAP has never been registered with the Commission in any capacity.

13. **Global Currency Traders Fund, LLC** ("Global Fund") is a limited liability company organized under the laws of the State of Washington that is owned, operated and managed by Lavin from his home in Woodinville, Washington.  Global Fund has never been registered with the Commission in any capacity.

14. **Global Currency Traders Group, LLC** ("Global Group") is a limited liability company organized under the laws of the State of Washington on or about December 1, 2000, whose purported address is 701 5th Avenue, Suite 4200, Seattle, Washington 98104.  Global Group claimed in its website *www.gctg.net* that it was "located in the beautiful Columbia Tower, right in the heart of downtown Seattle."  In fact, Global Group is operated from Lavin's home in Woodinville, Washington.  Global Group is solely owned and managed by Lavin.  Lavin has held himself out as the "president" of Global Group, and controlled the transfer of Global Group's funds through various domestic and off-shore accounts.  Global Group has never been registered with the Commission in any capacity.

**D.    The Individual Relief Defendants**

15. **Rebecca Lavin** is an individual residing at 14321 160th Ave. NE, Woodinville, Washington 98072.  Rebecca Lavin is the mother of Lavin.  Rebecca Lavin has never been registered with the Commission in any capacity.

16. **Wendy Anderson ("Anderson"),** is an individual residing at 227 Bellevue Way NE, Bellevue, WA 98004.  Anderson has held herself out as the Corporate Secretary of Global

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 6
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

Group in documents used to open trading accounts for Global Group.  Anderson has been never been registered with the Commission in any capacity.

**E.      The Corporate Relief Defendant**

17.      **Prosperitas International Credit Union ("PICU")** is a purported "credit union" purportedly operating out of Nevis.  Lavin has testified that the Defendants would participate at "seminars" sponsored by PICU and that PICU withdrew in excess of $3.9 million from the Defendants' accounts.  PICU has never been registered with the Commission in any capacity.

**IV.**

**FACTS**

**A.      Offer and Sale of Forex Options Contracts**

18.      Section 2(c)(2)(B)  of the Act, 7 U.S.C. § 2(c)(2)(B) (2002), grants the Commission jurisdiction over certain retail transactions in forex that are contracts for the sale of a commodity for future delivery, or options on forex, including the transactions alleged in this Complaint.

19.      Section 2(c)(2)(B)(i) and (ii) of the Act, 7 U.S.C. § 2(c)(2)(B)(i) and (ii) (2002), provides that the Commission shall have jurisdiction over an agreement, contract or transaction in forex that is a sale of a commodity for future delivery (or option thereon) or an option, so long as the contract is "offered to, or entered into with, a person that is *not* an eligible contract participant," and the counterparty, or the person offering to be the counterparty, is not one of the regulated entities enumerated in Section 2(c)(2)(B)(ii)(I-VI), 7 U.S.C. § 2(c)(2)(B)(i) and (ii) (2002).

20.      Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1 a(12)(A)(xi) (2002), defines an eligible contract participant as an individual who has total assets in excess of: a) $10 million; or

b) $5 million and who enters the transaction to manage the risk associated with an asset owned or a liability incurred, or reasonably likely to be owned or incurred.

21.     Most, if not all, of the forex options transactions alleged herein were offered to or entered into with persons who did not qualify as eligible contract participants, meaning that the customers identified herein were retail customers whose transactions are contemplated by Section 2(c)(2)(B) of the Act to be within the Commission's jurisdiction.

22.     During the period January 14, 2001 through January 31, 2003, the Defendants directly took in at least $16,869,230 in customer funds, placed these funds in accounts held in the name of Global Group and/or Global Fund.  Lavin has testified in ancillary proceedings that the Defendants transferred more than $16 million in customer funds to Midland Euro- Exchange, Inc.  ("Midland") and other third parties, and that Midland and the other third parties purportedly used those funds to buy and sell forex options contracts.

23.     During the relevant period, neither the Defendants, Midland nor any other third party used to trade customers' funds were proper counterparties for the retail forex transactions described in the Complaint, because they were not one of the regulated entities enumerated in Section 2(c)(2)(B)(ii)(I-VI) of the Act.

24.     Since i) the Defendants offered forex options transactions, ii) neither the Defendants, Midland nor any of the third parties with whom the Defendants wire transferred customers' funds were proper counterparties enumerated in Section 2(c)(2)(B)(ii)(I-VI) of the Act, and iii) the customers are not eligible contract participants, the Commission has jurisdiction over the transactions at issue in this action.

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 8
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

**B.     Misappropriation**

25.     On or about January 14, 2002, GAP, through Lavin, entered into a written "Managed Trading Account Agreement" ("Managed Agreement") with Midland, a company purportedly operating from Barbados.  The Managed Agreement states that Midland will manage GAP's funds, with a minimum investment of $100,000.  Thereafter, the Defendants solicited and received customers' funds, placed these funds in accounts held in the name of GAP and/or Global Group, and then wire transferred these funds to Midland to be traded for the managed account.  Although the GAP Managed Agreement was not signed until January 14, 2002, as early as January 14, 2001 the Defendants began sending customers' funds to Midland to be traded.

26.     Separately, on or about August 21,2002, Global Group, through Lavin, entered into a written "Agent Agreement" ("Agent Agreement") with Midland.  The Agent Agreement states that Global Group "wishes to be an Agent to Midland for the purpose of submitting investor Clients to Midland who wishes (sic) to invest into an International Currency Exchange entity, known as the Forex (sic) markets, for the purpose of generating profits for the client."

27.     Under the caption "Compensation to Agent," the Agent Agreement states:

The Parties agree that the commissions to be paid the Agent, shall be paid on all transactions that are consummated where the Agent has made an introduction of Client to Midland and had performed with Midland the due diligence to bring the Agent's Client into a successful commission.  The compensation shall be as follows:

A.1.  The compensation to be paid to the Agent shall be one percent (1%) of the Agent's Client's invested monthly amount.

Lavin has testified that at approximately this same time, GAP entered into a similar agreement with Midland, whereby Midland agreed to pay the same "commission" to GAP.  Because this 1% per month "commission" was never agreed to by customers, nor disclosed to customers, it was in reality a misappropriation of customers' funds by the Defendants.

**C.   Fraudulent Statements and Omissions**

28.   During the relevant period, the Defendants solicited members of the general public to open forex options trading accounts through the use of agents, Internet websites *www.globalassetpartners.net* and *www.gctg.net*, personal solicitations, and presentations at seminars.  During the period January 14, 2001 through January 31, 2003, the Defendants have induced over 60 customers to invest more than $16.8 million to buy and sell forex option contracts.  Throughout the entire relevant period, the Defendants have induced over 60 customers to invest more than $22 million to buy and sell forex option contracts.

29.   During the relevant period, Defendant Lavin, and the agents of the Defendants made numerous material, false and misleading representations and material omissions in sales solicitations to prospective and existing customers including the following:

(a) failing to disclose that the Defendants employed agents to tout the Defendants' investments by claiming that they were "friends" of Lavin, falsely claiming that they had invested funds and earned profits from such investments, and failing to inform customers that these agents were paid a commission by the Defendants for each customer who ultimately invested with the Defendants;

(b)  falsely representing in both solicitations and, later, in written customer account statements that customer funds earned profits of 2.5% per month or greater;

(c)  falsely representing that the proposed corporate Defendants conducted their respective business operations from offices in the Nevis and/or Seattle, Washington, when in fact, they were operated and controlled by Lavin from his home in Woodinville, Washington.

(d)  failing to disclose that the Defendants misappropriated one per cent (1%) per month of all money invested by customers with Midland, as an "Introducing Broker referral" or commission fee;

(e) falsely representing that the Defendants would manage customers funds and holding themselves out as "Professional Forex Managers," when in fact, the proposed Defendants were not experienced and pooled investors' funds and to be sent to and traded by an unregistered offshore commodity trading advisor***;

30.     After soliciting customers, the Defendants issued false monthly statements to them, which detailed the amount of funds contributed by the customer, and also purportedly showed the monthly "profits" earned.

31.     One customer's experience with the Defendants, as described in paragraphs 31 through 38 below, is typical of the Defendants' interaction with their various customers.

32.     One customer, was introduced to Lavin through an agent, who was used by Lavin to bring in customers.  In or about September 2002, the agent approached the customer to invest in a GAP fund that was trading foreign currencies.  The agent, acting as the Defendants' agent, falsely told the customer that he had his own money invested in GAP and that he was making at least 2.5 % profit each month.

33.     The agent, spoke to the customer many times over the following months about the profitability of his investment with GAP.  He assured the customer that he would make at least 2.5% per month on his investment.  The agent reassured the customer that he had his own money invested in GAP, that he had withdrawn some of those profits from his account, and  that he met Lavin in person and visited his office in Seattle, Washington.

34.     The customer eventually spoke to Lavin on or about June 2003.  Lavin stated that he was a partner or officer in control of GAP.  Lavin further described his investment as trading options on forex.  Lavin explained that he was making a 2.5% profit monthly on his trades.  After a few conversations with Lavin, and based on Lavin's representations of profit, the customer decided to invest.

35.     On or about June 2003, subsequent to his conversation with Lavin, the customer signed an agreement with GAP.  On or about June 23, 2003, Lavin instructed the customer to

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 11
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

wire $300,000 to U.S. Bank in Seattle to an account titled "Global Currency Trading Group, LLC" ("GCTG account").

36.     As a result of the statements made by Lavin to the customer in his telephone conversations with each of them, and the statements the customer received after investing his initial $300,000 which showed he was purportedly earning a steady 2.5% profit each month, the customer invested an additional $200,000 on or about January 2, 2004.  The customer was told by Lavin that this additional $200,000 would also be used for additional trading in forex options. As instructed by Lavin, the customer wired the funds to the GCTG account, which was controlled by Lavin.

37.     Thereafter, the customer received monthly statements from the Defendants that consistently showed a profit of 2.5% per month, each month the account was open.  At the end of calendar years 2003, 2004, and 2005, the customer received a summary of his purported yearly earnings.

38.     On or about March 6, 2006, the customer received an e-mail from Lavin to inform him that his investment in forex options contracts was diverted from his GAP account to purchase an interest in a real estate development in Texas.  When the customer advised Lavin that he did not wish to invest in the real estate development, Lavin ignored his instructions, and soon refused to return the customer's calls and also refused to return the customer's funds to him as requested.

39.     In May 2006, the customer called the agent to discuss the customer's investments with Lavin and GAP.  When the customer asked the agent if he received a commission for his solicitation of investors for the Defendants, he admitted that he had.  Prior to that conversation,

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 12
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

the customer was unaware that the agent had received a commission for soliciting investors on behalf of the Defendants.

**D.      False Reports and Statements**

40.      Midland sent monthly statements to the Defendants for the managed account showing the options contracts bought and sold on the Defendants' behalf, the options contracts that had expired, and the purported value of the Defendants' accounts.  Lavin has testified that he used these Midland statements to personally determine the "value" of each of the Defendants' customers' accounts.  Lavin would then send the customers an account statement reflecting this amount arbitrarily chosen by Lavin.

41.      The corporate Defendants, through their agent Lavin, prepared and transmitted to customers these monthly account statements.  The monthly account statements were issued to in excess of 60 customers beginning on or about January 14, 2001 to the present.  These statements were issued on GAP letterhead, purportedly from the Nevis address listed at the top of the statement.  In fact, the statements were sent from Lavin's home address in Woodinville, Washington.

42.      The account statements issued by the Defendants to customers also falsely stated that the customers had purportedly earned 2.5% interest profit or greater, per month, as a result of the managed trading of the customers' accounts purportedly performed by the Defendants.  These statements were false, because they did not accurately represent the monthly profits earned by customers, as customers rarely if ever earned any actual profits.

43.      The statements also contained material omissions, including but not limited to: the failure to disclose that each month a 1% "Introducing Broker referral" or "commission" was misappropriated by the Defendants for each month the account was opened.  The statements also

failed to disclose that agents were paid a commission for each customer they brought to the Defendants, which was paid from customer funds.

44.     Despite their representations, the Defendants did not manage customer funds, nor did customers earn a minimum 2.5% per month profit on their investments.  Lavin has admitted in sworn deposition testimony that he and the corporate Defendants did not actually manage any customer funds, that Midland purportedly "managed" the customer funds, the corporate Defendants pooled customers' money before sending it to Midland.

45.     Further, Lavin has testified that at the time customers' funds were being traded by Midland, he did not know how Midland would actually invest customer funds, if at all. However, Midland did provide Lavin with trading records that show Midland was buying and selling forex options contracts with customer funds.

**E.     Defendant Lavin Controlled the Corporate Defendants**

46.     Defendant Lavin caused GAP to be formed, purportedly as an IBC in Nevis, and served as it president and  manager.  At all relevant times, Defendant Lavin has been the manager and president of GAP, and held himself out as the manager sole manager and president of Global Group, and the sole manager of Global Fund at the time he entered into contractual agreements with Midland and opened bank accounts for the corporate Defendants both in the United States and offshore.

47.     As the corporate officer and manager of GAP, Global Fund and Global Group, Lavin exercised control over the day-to-day business operations of the corporate Defendants, and was the signatory on their respective bank accounts.  Lavin directed the wire transfer of customer money into and out of these accounts, and transferred customer money to Midland.  Lavin opened trading accounts for the corporate Defendants, directed the flow of customer funds into and out of these accounts, and signed contracts on behalf of the corporate Defendants.  Lavin

1    exercised daily control over all of the corporate Defendants' business operations.  Lavin was also

2    responsible for the content of the websites used by the corporate Defendants to further their

3    scheme: *www.gctg.net* and *www.globalassetpartners.net*.

4         48.     Lavin is Global Group's registered agent and sole manager.  Global Group's

5    "Limited Liability Company Operating Agreement" stated that its "business purpose" is:

> The company's business and purpose is to trade, buy, sell, spread or
> otherwise acquire, hold or dispose of foreign currencies, forward contracts
> and options on currencies.  The Company's objective is appreciation of its
> assets through investment and speculative trading.  The Company and
> Manger shall have all powers necessary or desirable to accomplish these
> purposes.

9    Lavin signed Global Group's "Limited Liability Company Operating Agreement" as its sole

10   manager and member.

11        49.     Lavin regularly corresponded with officials at Midland, and directed when wire

12   transfers were to be issued, specifying the amount of each wire, the person or entity to whom the

13   wire transfer was to be made, and the bank and account number to which the funds were to be

14   transferred.  When questions arose as to whether a wire transfer had been made correctly or if

15   Midland had paid the correct commission, Lavin would make inquiries to officials at Midland

16   and the various banks for clarification.  If the wrong party had been specified in a wire transfer

17   request, Lavin would either correspond or speak telephonically with bank officials concerning

     the error, and provide bank officials with directions as to how he wanted the error resolved.

18        50.     In his dealings with officials at Midland and the various banks, Lavin used a

19   variety of e-mail addresses, phone numbers and fax numbers, all of which are listed to addresses

20   in the State of Washington, including Lavin's home in Woodinville, Washington as well as a

21   purported business address in Seattle, Washington.

22

*U.S Commodity Futures Trading Commission's Complaint*                           *US CFTC*
PAGE 15                                                   *Timothy J. Mulreany*
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*     *1155 21st NW Washington DC 20581*
                                                           *(202) 418-5306*

51.     Lavin, as the signatory on the corporate Defendants' bank accounts and the manager in charge of all of the corporate Defendants' business operations, was responsible for all transfers of customers' funds into and out of the United States, as well as transfer of customer funds to the Relief Defendants.

52.     In furtherance of his fraudulent scheme, Lavin sent e-mails to Midland to check on the status of his commission payments, personally confirmed the wire transfer of customer funds to Midland and its banks, and directed the transfer of customer funds between the corporate Defendants' accounts at Midland and the corporate Defendants' bank accounts.

**F.     Lavin was the Agent of the Corporate Defendants**

53.     According to Lavin, he is the founder, president and only officer of the corporate Defendants.  Lavin acted on behalf of these corporate Defendants, by, among other things, operating websites that solicited the public to establish managed accounts with the corporate Defendants and issuing false and misleading account statements on the letterhead of corporate Defendants.

54.     The customer funds solicited by Lavin through the websites and otherwise were directed to, and deposited in, the  corporate Defendants' bank accounts that are/were controlled exclusively by Lavin.

55.     Lavin is the sole signatory of the corporate Defendants' bank accounts, in the U.S. and offshore.  Lavin also signed contracts on behalf of the corporate Defendants.  Lavin was the agent of the corporate Defendants.

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 16
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

1

## V.

2

### COUNT ONE

3

**VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b), AND
REGULATION 32.9(a) and (c), 17 C.F.R. §32.9(a) and (c):
FRAUD BY MISAPPROPRIATION AND SOLICITATION**

4

5

56.     Plaintiff re-alleges paragraphs 1 through 55 above and incorporates these

allegations herein by reference.

6

7

57.     In or in connection with the offer to enter into, the entry into, the confirmation of,

8

the execution of, or the maintenance of commodity option transactions, the Defendants have

9

cheated, defrauded, or deceived, or attempted to cheat, defraud or deceive, other persons, by

10

making false, deceptive or misleading representations of material facts and/or by failing to

disclose material facts necessary to make other facts they disclosed not misleading in their

11

solicitations of customers, all in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002),

12

and Regulations 1.1(b)(1) and (3), and 32.9(a) and (c), 17 C.F.R. §§ 1.1(b)(1) and (3), 32.9(a)

13

and (c) (2007).

14

58.     By using funds solicited to trade commodity options for customers for their own

15

personal expenses, as set forth above, Defendants have knowingly misappropriated funds in

16

violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(1) and (3),

and 32.9(a) and (c), 17 C.F.R. §§ 1.1(b)(1) and (3), 32.9(a) and (c) (2007).

17

59.     During the relevant period, Lavin was acting as the agent of the corporate

18

Defendants.  Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002) and Regulation

19

1.2, 17 C.F.R. § 1.2 (2007), strict liability is imposed upon principals for the actions of their

20

agents acting within the scope of their employment.  Therefore, GAP, Global Group and Global

21

Fund are liable for Lavin's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and

22

Regulations 1.1(b)(1) and (3), 32.9(a) and (c), 17 C.F.R §§ 1.1(b)(1) and (3), and 32.9(a) and (c)

1  (2007), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002), and Regulation

2  1.2, 17 C.F.R. § 1.2 (2007).

3      60.    Lavin directly or indirectly controlled GAP, Global Group and Global Fund and

4  did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the

5  corporate Defendants' violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and

6  Regulations 1.1(b)(1) and (3), 32.9(a) and (c), 17 C.F.R §§ 1.1(b)(1) and (3), and 32.9(a) and (c)

7  (2007).  Lavin is therefore a controlling person and is liable for these violations pursuant to

   Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

8      61.    Each act of solicitation fraud, fraud by misappropriation, false statement and/or

9  omission made during the relevant period, including but not limited to those specifically alleged

10 herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b)

11 (2002), and Regulations 1.1(b)(1) and (3), 32.9(a) and (c), 17 C.F.R §§ 1.1(b)(1) and (3), and

12 32.9(a) and (c) (2007).

13                              **COUNT TWO**

14 <u>**VIOLATIONS OF SECTION 4c(b) OF THE ACT, 7 U.S.C. § 6c(b), AND**</u>
   <u>**REGULATIONS 1.1(b)(2) & 32.9(b), 17 C.F.R. §§ 1.1(b)(2) and 32.9(b):  MAKING**</u>

15 <u>**FALSE REPORTS OR STATEMENTS**</u>

16     62.    Plaintiff re-alleges paragraphs 1 through 61 above and incorporates these

17 allegations herein by reference.

18     63.    In or in connection with the offer to enter into, the entry into, the confirmation of,

19 the execution of, or the maintenance of commodity option transactions, the Defendants have

20 made or caused to be made other persons false reports or statements, all in violation of Section

21 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(2), and 32.9(b), 17 C.F.R. §§

22 1.1(b)(2), and 32.9(b) (2007),

64.     During the relevant period, Lavin was acting as the agent of the corporate Defendants.  Under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002) and Regulation 1.2, 17 C.F.R. § 1.2 (2007), strict liability is imposed upon principals for the actions of their agents acting within the scope of their employment.  Therefore, GAP, Global Group and Global Fund are liable for Lavin's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(2) and 32.9(b), 17 C.F.R §§ 1.1(b)(2) and 32.9(b)(2007), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002) and Regulation 1.2, 17 C.F.R. § 1.2 (2007).

65.      Lavin directly or indirectly controlled GAP, Global Group and Global Fund and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the corporate Defendants violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(2) and 32.9(b), 17 C.F.R §§ 1.1(b)(2) and 32.9(b)(2007).  Lavin is therefore a controlling person and is liable for these violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002).

66.     Each false report or statement in connection with the confirmation of the execution of any commodity option transaction, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 1.1(b)(2) and 32.9(b), 17 C.F.R §§ 1.1(b)(2) and 32.9(b)(2007).

### COUNT THREE

### DISGORGEMENT OF THE ASSETS OF THE RELIEF DEFENDANTS

67.     Plaintiff realleges paragraphs 1 through 66 above and incorporates these allegations herein by reference.

68.     The Defendants have committed a fraud upon their customers in connection with the purchase and sale of forex options contracts as alleged herein.

69.     Lavin diverted customer funds to the two individuals and one corporate entity listed below for no apparent *bona fide* goods or services.

70.     The Relief Defendants are not *bona fide* purchasers with legal and equitable title to the customers' funds or assets, and the Relief Defendants will be unjustly enriched if they are not required to disgorge the funds or the value of the benefit they received as a result of the Defendants' fraud.

71.     The Relief Defendants should be required to disgorge the funds and assets, or the value of the benefit they received from those funds and assets, which are traceable to the Defendants' fraud.

72.     By reason of the foregoing, the Relief Defendants hold funds and assets in constructive trust for the benefit of the Defendants' customers.

73.     The Relief Defendants have received funds or otherwise benefited from funds which are directly traceable to the funds obtained from the Defendants' customers through fraud. Upon information and belief, the following Relief Defendants have received, at least, the following amounts:

     a.  Rebecca Lavin:     $75,000;

     b.  Wendy Anderson:     $5,897.32; and

     c.  PICU:     $3,934,005.53.

## VI.

## RELIEF REQUESTED

Wherefore, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), and pursuant to its own equitable powers, enter:

     a.     A permanent injunction prohibiting the Defendants and any other person or entity associated with them, or any successor thereof, from engaging in conduct

*U.S Commodity Futures Trading Commission's Complaint*     *US CFTC*
PAGE 20     *Timothy J. Mulreany*
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*     *1155 21st NW Washington DC 20581*
*(202) 418-5306*

violative of the provisions of the Act and Regulations as alleged in this Complaint, and from engaging in any activity relating to commodity interest trading, including but not limited to, soliciting, accepting or receiving funds, revenue or other property from any person, giving advice for compensation, or soliciting prospective customers, related to the purchase and sale of any commodity futures or options on commodity futures contracts;

b.    an order directing the Defendants and any successors thereof, as well as the Relief Defendants and any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices that constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

c.    an order directing the Defendants to make full restitution to every customer whose funds were received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

d.    an order directing the Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $120,000 for each violation prior to October 24, 2004, and $130,000 for violations thereafter, or triple the monetary gain to Defendants for each violation of the Act and Regulations described herein.

e.    an order requiring the Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (1994); and

*U.S Commodity Futures Trading Commission's Complaint*
PAGE 21
*U.S. Commodity Futures Trading Commission vs. Joseph Clark Lavin, et al.*

*US CFTC*
*Timothy J. Mulreany*
*1155 21st NW Washington DC 20581*
*(202) 418-5306*

1    f.    such other and further remedial ancillary relief as the Court may deem just and

2    appropriate.

3    Dated:  July 26, 2007

4                                              Respectfully submitted,

5                                              ATTORNEYS FOR PLAINTIFF
                                               COMMODITY FUTURES TRADING
                                               COMMISSION
6                                              1155 21st Street NW
                                               Washington, DC

7

8    _____
                                               Timothy J. Mulreany
                                               Chief Trial Attorney
9                                              tmulreany@cftc.gov
                                               (202) 418-5306
10                                             (202) 418-5523 facsimile

11   _____
                                               David Reed
                                               Senior Trial Attorney
12                                             tdreed@cftc.gov
                                               (202) 418-5447

13

14

15

16

17

18

19

20

21

22